**INTERNATIONAL GRAPHICS, DIVISION OF MOORE BUSINESS FORMS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 586–83C.**

United States Claims Court.

April 6, 1984.

Robert D. Wallick, Washington, D.C., for plaintiff.

Stephen R. Bergenholtz, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## ORDER

REGINALD W. GIBSON, Judge:

This matter comes before the court on defendant's "Motion To Compel Compliance With Agreement," filed March 15, 1984, and plaintiff's opposition thereto. In said motion, defendant requests that the court order plaintiff to comply with representations of its counsel at a hearing held on February 15, 1984, that neither he nor those working for him or with him would contact (*i.e.*, interview) employees of the United States Government, on matters related to subject litigation, except by notice to counsel for defendant.

The present dispute reflected in said motion had its genesis in defendant's "First Motion To Compel Discovery Under Rule 37," filed February 14, 1984, and the hearing held on said motion the following day. In its February 14, 1984 motion, defendant prayed, *inter alia*, for an order compelling plaintiff to cease all contacts with three employees of the Department of Commerce, except with reasonable advance notice to counsel for defendant. This request was apparently based on Disciplinary Rule 7–104 of the Code of Professional Responsibility for the D.C. Bar. Subsequently, dur-

ing the hearing held on February 15, 1984,[1] the following colloquy took place, as reflected in the transcript:

THE COURT: Well then, it should be so ordered.

That disposes of, at least for the moment, the issue with respect to your Motion to Compel, is that correct?

MR. BERGENHOLTZ: Not entirely, Your Honor.

THE COURT: Except ... that the Plaintiff be ordered not to contact employees.

MR. BERGENHOLTZ: Yes, Your Honor. That's the remaining portion.

THE COURT: Would you be, at this time, satisfied if I would ask Counsel to state on the record that he will abstain, and request all of his assistants and agents to also abstain? Would you be satisfied?

MR. BERGENHOLTZ: Yes, Your Honor, we would accept that.

MR. WALLICK: Yes, Your Honor, we will abstain from contacting employees of the United States Government on this matter, *except through Counsel*, and I will so instruct those working for me and with me. (Emphasis added.)

The court's thrust in the foregoing resolution of the issue before it was motivated by the desire to avoid undue contentiousness, to the maximum extent possible, in this suit, which had already spawned a plethora of motions and countermotions in the more than six months since it was filed.[2] Hence, based *solely* on the foregoing representations of counsel for the plaintiff, this court disseminated an order on February 17, 1984, which memorialized various verbal orders issued from the bench

during the hearing, in which, *inter alia*, it denied defendant's request for an order, respecting plaintiff's contacts with the referenced Commerce Department employees, as moot.

Notwithstanding the foregoing, on March 6, 1984, counsel for the plaintiff forwarded a letter to the court, advising that in light of Opinion No. 129, "recently promulgated" by the Committee on Legal Ethics of the District of Columbia Bar,

... plaintiff intends to modify its earlier oral undertaking concerning employees of defendant, effective, Monday, March 19, 1984, unless directed otherwise by this Court. Thereafter, we will not contact persons employed by defendant without first obtaining the consent of defendant's counsel only if the person could bind defendant in this matter. We interpret this to mean the contracting officer and his superiors.

In addition to Opinion No. 129,[3] plaintiff cited two additional reasons for its position —(i) a number of instances in which defendant has allegedly "acted with considerable lack of candor" and (ii) its concern that "defendant might be unduly discouraging witnesses from providing this Court with the benefit of all their relevant testimonies."

Shortly thereafter, on March 15, 1984, defendant filed subject motion in which it requested this court to order plaintiff "to adhere to its February 15, 1984 representations, until such time as plaintiff formally moves for a release from its representations on the record, and the Court rules on that motion after an appropriate response by defendant." In said motion defendant

---

1. The rule provides in pertinent part as follows:
   DR 7–104 Communicating With One of Adverse Interest.
   (A) During the course of his representation of a client a lawyer shall not:
   (1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

2. In its First Motion To Compel Discovery Under Rule 37, defendant prayed for an order directing plaintiff "to cease all contact, direct and indirect, with Messrs. Huyck, Potterf, and Steinhauser, except with reasonable advance notice to counsel for defendant." This prayer of defendant was premised, alternatively, if plaintiff refused to "agree to cease these contacts at once."

3. The first page only of the majority opinion thereto was submitted with plaintiff's letter.

also noted that (i) there was a "vigorous dissent" to Opinion No. 129 cited by plaintiff, which indicates that the conclusion relied on by plaintiff is "far from settled"; (ii) even if Opinion No. 129 is accepted by this court, contacts without the knowledge of defendant's counsel should be prohibited with a wider range of people than the contracting officer and his superiors; (iii) it had only withdrawn its motion to compel plaintiff to refrain from contacting government personnel because of plaintiff's responsive representation to the court that he would so refrain, and plaintiff should not be permitted to unilaterally abrogate its counsel's agreement; (iv) plaintiff can obtain whatever information it seeks through depositions, and now has more than ample time in which to do so inasmuch as the trial date has been continued to May 1, 1984; and (v) its defense of this action has been made consistently in good faith.

In its opposition to defendant's motion, filed March 26, 1984, plaintiff averred that it had only made its representations at the February 15, 1984 hearing because trial was "imminent" and it had not yet researched an opposition memorandum to defendant's motion. Moreover, it contended, based on its subsequent research, that defendant's position in its February 14, 1984 motion was erroneous in that it provided an unduly restrictive view of the individuals within an organization who can be contacted by counsel without the consent of opposing counsel.

The court agrees with the position taken by defendant in its motion that, given the background and circumstances under which the February agreement was reached, plaintiff may not unilaterally disavow same. It is patently clear from the transcript of the February 15, 1984 hearing that plaintiff's statement that he would *not*

contact any government employees connected with the instant litigation was totally unconditional and with full knowledge of the attending facts and circumstances. The court must presume that counsel appearing before it are familiar with existing law and applicable rules. Plaintiff's informal notice to the court on March 6, 1984, that it "intends to modify its earlier oral undertaking concerning employees of defendant," therefore, cannot be justified on the ground that its counsel was unfamiliar with applicable rules at the time the representation was made.[4]

This court is mindful of the fact that the Disciplinary Rules of the Code of Professional Responsibility are applicable to proceedings in this court, and we have inherent power to assist in their enforcement. *See Kenosha Auto Transport Corp. v. United States,* 206 Ct.Cl. 888, 891 (1975). However, the opinion on which plaintiff relies is merely an interpretation of one of the Disciplinary Rules (DR 7–104) of the District of Columbia Code of Professional Responsibility by the Committee on Legal Ethics of the District of Columbia Bar. These interpretations are intended only to be considered as *"advice* to members of the Bar and the public" by the D.C. Legal Ethics Committee. *See Code of Professional Responsibility and Opinions of the D.C. Bar Legal Ethics Committee* 77 (1983).

Moreover, the particular opinion relied on by plaintiff, Opinion No. 129, interpreted a highly ambiguous term in DR 7–104, and it is clear from the dissent thereto that DR 7–104 is susceptible to varying reasonable interpretations.[5] Aside from the foregoing, the agreement by counsel for the plaintiff on the record on February 15, last, that he will abstain "from contacting employees

4. The court notes that the "recently promulgated" opinion, Opinion No. 129, which is the basis for plaintiff's request to modify its commitment to the court, was issued on September 20, 1983, approximately five months *before* plaintiff's initial representation to the court.

5. The ambiguous term in question is the word "party," when the actual opposing party in the

lawsuit is a large organization. *See* note 1, *supra.* The majority, in Opinion No. 129, construed the term to include only those employees of a party to litigation who can "bind" the party in litigation. In contrast, the dissent interpreted the term to include all those employees whose statements could be used as admissions against the party.

of the United States Government on this matter, except through counsel ..." was made without regard to the technical niceties, if not the existence of, Opinion No. 129. Therefore, Opinion No. 129 does not, *ipso facto,* constitute an adequate ground upon which counsel for the plaintiff may unilaterally modify the voluntary representations he has made to the court and to the defendant on the record upon which both have relied.

Finally, the court is convinced that the foregoing conclusions will visit no prejudice upon plaintiff if it is compelled to abide by its voluntary commitment of February 15, 1984. While plaintiff has stated that assorted instances of defendant's alleged bad faith have given it reason to believe that "defendant might be unduly discouraging witnesses from providing this Court with the benefit of all their relevant testimonies," even if we assume that the foregoing allegations are true, plaintiff has two means at its disposal—either depositions or informal interviews with the consent of counsel for defendant—by which it can discover the prospective relevant testimony of all pertinent witnesses. Plaintiff has not been restrained from utilizing either of these discovery procedures since the inception of subject litigation. Given the additional time afforded the parties by the latest extensions of the trial date (from February 27, 1984 to May 1, 1984), plaintiff certainly appears to have more than adequate time in which to conduct all necessary and relevant inquiries.

Accordingly, and for the foregoing reasons, IT IS HEREBY ORDERED that defendant's motion to compel plaintiff's compliance with its February 15, 1984 representations to this court is GRANTED.